618 So.2d 1076 (1993)
BELLE PASS TERMINAL, INC., et al.
v.
JOLIN, INC., et al.[1]
JOLIN, INC.
v.
BELLE PASS TERMINAL, INC., et al.
Nos. 92 CA 0154, 92 CA 0155.
Court of Appeal of Louisiana, First Circuit.
April 23, 1993.
Rehearing Denied June 16, 1993.
*1077 Donald E. Theriot, Regina S. Wedig, Alvin J. Bordelon, Walker, Bordelon, Hamlin, Theriot, Etc., New Orleans, Michael A. Mayhall, New Orleans, for plaintiff-appellee Belle Pass Terminal, Inc., Harold Callais, Richard Guidry.
John F. Olinde, New Orleans, for defendant-appellant John, Inc., Joseph E. Blanchard.
Frank G. DeSalvo, New Orleans, for intervenor Elmo J. Pitre, Jr.
Stephen E. Caillouet, Thibodaux, for Caillouet Land Corp.
Before CARTER, LeBLANC and PITCHER, JJ.
PITCHER, Judge.
Appellants, Jolin, Inc. ("John") and Joseph E. Blanchard ("Blanchard") filed suit in reconvention for damages in the trial court alleging tortious interference with contract and unfair trade practices by appellees, Belle Pass Terminal, Inc. ("Belle Pass"), Richard P. Guidry ("Guidry"), Harold Callais ("Callais"), and Elmo J. Pitre ("Pitre"). The trial court sustained peremptory exceptions raising the objection of no cause of action as to both claims and dismissed appellants' action with prejudice. It is from this dismissal that appellants appeal. We affirm.

FACTS AND PROCEDURAL BACKGROUND
On April 5, 1990, Belle Pass and Callais filed suit against Jolin and Blanchard for breach of warranty of title, rescission, redhibition, breach of contract and unfair trade practices. Their action arose out of a sale and mortgage of movable property, *1078 and the purported transfer of leases from Jolin and Blanchard to Belle Pass, that had taken place almost one year prior to the date.
On January 22, 1991, Blanchard and Jolin filed a reconventional demand against Belle Pass, Guidry, Callais and Pitre, asserting causes of action for reformation of contract, tortious interference with contract, and unfair trade practices. They also sought to pierce the corporate veil of Belle Passe in an effort to reach the corporate officers, Guidry and Callais, individually.
The reconventional demand alleged that: on April 6, 1989, Callais purchased from Jolin certain movable property for a purchase price of one million dollars ($1,000,000.00); Jolin and Belle Pass entered into a "Sale and Mortgage", and in connection therewith, Belle Pass executed a promissory note in the amount of two million dollars ($2,000,000.00) plus interest at the rate of thirteen per cent (13%) per annum from date until paid; the note was signed by Guidry, on behalf of Belle Pass as maker, and endorsed by Guidry and Pitre, individually; and the sale and mortgage was for all of the assets and improvements located on property in Fourchon, Louisiana, and was the same property that Blanchard leased from Caillouet Land Corporation ("Caillouet") on April 30, 1973.
Appellants further alleged in their reconventional demand that: the agreement between the parties was that Jolin sold and transferred to Belle Pass, Guidry and Pitre, any and all assets located on the leased property with the contractual right for Belle Pass, as purchasers, to operate an offshore docking and service facility; the parties agreed that Belle Pass would pay Jolin the rent due under John's lease with Caillouet, and Jolin would be responsible for making the payments to Caillouet; the true intent of the parties was that Belle Pass, Guidry and Pitre would only purchase the assets and operate a business, while Jolin and/or Blanchard would maintain the lease, and that the contract between the parties was erroneously put to writing and does not reflect the true intent of the parties.
The reconventional demand went on to allege that: a demand letter was sent to Belle Pass by Jolin admonishing them that they would not accept late payments in the future and directing Belle Pass to remedy the default of the terms of the mortgage concerning insurance on the mortgaged property; Callais informed Caillouet that Jolin and/or Blanchard had sold all rights, title and interest to the leased property at Fourchon, Louisiana and gave Caillouet a copy of the April 6, 1989, sale and mortgage; Callais, on behalf of Belle Pass and/or Callais, Bob Faulk and Richard Guidry, made an offer to Caillouet to lease the subject property in Fourchon, Louisiana; and Caillouet filed suit against Jolin and Blanchard seeking a cancellation and rescission of the lease, alleging that Belle Pass, Guidry, Pitre and Callais intentionally, willfully, and fraudulently attempted to get Caillouet to seek a cancellation of the lease with Jolin and Blanchard, so they might be able to acquire the said lease.
The reconventional demand further alleged that defendants in reconvention intentionally interfered with the lease contract between Caillouet and Jolin and the actions of the defendants in reconvention constituted unfair or deceptive acts in violation of the Unfair Trade Practices and Consumer Protection Law as set forth in LSA-R.S. 51:1401 et seq.; and, as a result of the actions by defendants in reconvention, Jolin and Blanchard had to expend money in defense of a suit to rescind and cancel the lease at Fourchon, Louisiana.
On May 9, 1991, Jolin and Blanchard filed an amended reconventional demand which further alleged that defendants in reconvention: misrepresented their true intent by seeking the inclusion of language in the documents that would give them the right to go onto the leased property to operate their business; misrepresented to Caillouet that they had in fact, by the sale and mortgage, purchased the leased property in question; tried to influence a cancellation of the lease by Jolin and/or Blanchard, by offering to lease the property for more money; failed to disclose that they had agreed to abide by terms of the *1079 Caillouet lease; and took action when the lease was the object of pending litigation.
Callais, Belle Pass, and Guidry filed exceptions raising the objection of no cause of action. These exceptions were jointly heard by the trial court. On June 5, 1991, judgment was rendered, granting the exceptions of no cause of action. The trial judge directed the plaintiffs in reconvention to amend their pleadings within fifteen (15) days to state a cause of action for tortious interference with contract as defined in 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989), and to state a cause of action for damages under LSA-R.S. 51:1405 et seq., or to suffer their dismissal.
On June 25, 1991, appellants filed a second amended reconventional demand that was directed toward piercing the corporate veil against Callais, by alleging that he was an officer and shareholder of Belle Pass. On August 26, 1991, they filed a third amended reconventional demand that was directed toward their effort to pierce the corporate veil as to Guidry. Appellants alleged that Guidry was an officer of Belle Pass and that he participated in the negotiations and ultimate execution of the contracts and/or agreements between John and Belle Pass.
Callais, Belle Pass and Guidry again filed exceptions raising the objection of no cause of action. On October 4, 1991, the trial judge granted the exceptions and dismissed appellants' claims for tortious interference with contract and for unfair trade practices. The judgment referenced the court's prior judgment on the same issue and stated that the appellants' amendments still did not state a cause of action. On November 5, 1991, the trial judge also granted Pitre's exception raising the objection of no cause of action on the claim of tortious interference with contract and unfair trade practice. It is from these two judgments that appellants now appeal.
Appellants have set forth two assignments of error for our review:
1. The trial court erred in granting the exception of no cause of action for tortious interference with contract.
2. The trial court erred in granting the exception of no cause of action for unfair trade practices.

NO CAUSE OF ACTION
The law is well settled that the function of the exception of no cause of action is to test the legal sufficiency of the petition. The correctness of the well-pleaded allegations of fact is conceded, so the issue becomes whether the face of the petition presents a case which legally entitles mover to the redress sought. Every reasonable interpretation must be accorded to the language of the petition in favor of maintaining the sufficiency of the petition and affording the litigant an opportunity to present his evidence. Hero Lands Company v. Texaco, Inc., 310 So.2d 93, 96 (La. 1975); Jarrell v. Carter, 577 So.2d 120 (La.App.1st Cir.), writ denied, 582 So.2d 1311 (La.1991). Any reasonable doubt as to the legal sufficiency of the plaintiff's petition must be resolved in favor of a finding that the petition has stated a cause of action. Jarrell v. Carter, 577 So.2d at 123; Monroe Medical Clinic, Inc. v. Hospital Corporation of America, HCA, 522 So.2d 1362, 1364 (La.App.2d Cir.1988). Documents and other exhibits must be considered in evaluating whether plaintiff has stated a cause of action, and the contents of such addendum must also be accepted as true. Godwin v. East Baton Rouge Parish School Board, 372 So.2d 1060, 1062 (La.App.1st Cir.), writ denied, 373 So.2d 527 (La.1979).

Assignment of Error Number One

TORTIOUS INTERFERENCE WITH CONTRACT
Appellants contend that the trial court erred in granting the exception raising the objection of no cause of action for tortious interference with contract. They argue that the reconventional demand was sufficient and that they were entitled to have this cause of action tried with the opportunity to prove their allegations.
A cause of action for the tortious interference with contract was first recognized in Louisiana in the landmark case of 9 to 5 *1080 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989). In Spurney, the court ruled that:
[A]n officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to refrain from acts intentionally causing the company to breach the contract or to make performance more burdensome, difficult or impossible or of less value to the one entitled to performance, unless the officer has reasonable justification for his conduct. The officer's action is justified, and he is entitled to a privilege of immunity, if he acted within the scope of his corporate authority and in the reasonable belief that his action was for the benefit of the corporation.
538 So.2d at 231.
The case of 9 to 5 Fashions, Inc. v. Spurney is extremely limited in its scope and application, and was so intended when decided by the Louisiana Supreme Court. The court stated the following:
It is not our intention, however, to adopt whole and undigested the fully expanded common law doctrine of interference with contract, consisting of "a rather broad and undefined tort in which no specific conduct is proscribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way." [citations omitted].
538 So.2d at 234.
For purposes of analysis, the court divided the cause of action into five separate elements:
1. the existence of a contract or a legally protected interest between the plaintiff and the corporation;
2. the corporate officer's knowledge of the contract;
3. the corporate officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome;
4. absence of justification on the part of the officer;
5. causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.
538 So.2d at 234.
Appellants argue that all of the Spurney elements are present in the allegations set forth in their reconventional demand and amended reconventional demands. They contend that: (1) there was a contract between Belle Pass Terminal, Inc. and Jolin, Inc.; (2) Harold Callais had full knowledge of the contract; (3) the actions of Harold Callais caused the corporation to breach performance of the contract, as well as caused the Caillouet Land Corporation to file suit against Jolin, Inc. to cancel its leases; (4) there was no justification for Harold Callais' action; and (5) the actions of Harold Callais rendered the performance of the contract impossible or more burdensome and caused damages to Jolin, Inc. and Joseph Blanchard. We disagree with the appellants' assessment that they have met the requirements under Spurney.
Again, we note that Spurney is limited in its scope and application. It applies to a corporate officer interfering with his employer's corporate contract with third persons. Great Southwest Fire Ins. Co. v. CNA Ins. Cos., 557 So.2d 966, 969 (La. 1990). Here, appellants are trying to bootstrap the Jolin/Blanchard and Belle Pass contract with the Caillouet and Jolin/Blanchard contract in an effort to realize the privity of contract that is needed for a tortious interference claim. Tallo v. Stroh Brewery Co., 544 So.2d 452, 454 (La.App.4th Cir.), writ denied, 547 So.2d 355 (La.1989). To allow this to occur would be an improper extension of Spurney.
We find that there was no privity of contract between Belle Pass, Callais and Guidry relative to the leases between Caillouet and Jolin/Blanchard. Because there is no privity of contract, there is no cause of action for tortious interference with contract, and the trial court was correct in so holding.

Assignment of Error Number Two

UNFAIR TRADE PRACTICES
Appellants further contend that the trial court erred in granting the exception *1081 raising the objection of no cause of action for unfair trade practices.
LSA-R.S. 51:1405(A) declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are ... unlawful." This legislation is broadly and subjectively stated and does not specify particular violations. Jarrell v. Carter, 577 So.2d at 123; Monroe Medical Clinic, Inc., 522 So.2d at 1365; Roustabouts, Inc. v. Hamer, 447 So.2d 543, 548 (La.App. 1st Cir.1984). What constitutes an unfair trade practice is better determined by the courts on a case-by-case basis. In that way, the many harms sought to be proscribed by the Unfair Practices and Consumer Protection Law can be prevented. It has been held that a practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious. Roustabouts, Inc., 447 So.2d at 548. LSA-R.S. 51:1409 confers a right of private action on "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal" from unfair trade practices. Although business consumers and competitors are included in the group afforded this private right of action, they are not its exclusive members. Roustabouts, Inc., 447 So.2d at 548.
Appellants argue that, because the definition of what may constitute an unfair act or practice is broad and subjective, the allegations contained in their reconventional demand are sufficient and that they are entitled to a trial to determine whether the actions of defendants fall within the scope of LSA-R.S. 51:1401 et seq. Admittedly, LSA-R.S. 51:1401 et seq. has been interpreted as being broad and subjective, but the broadness or subjectivity of the act still does not relieve them from stating a claim for which they can receive a legal remedy under the application of substantive law.
When we apply the substantive law to the allegations contained in appellants' reconventional demand and amended reconventional demand, we are not convinced that they were sufficient to state a cause of action as held by the trial judge. We agree with appellees that the appellants have not alleged any conduct that offends established public policy, nor have they alleged that the conduct complained of, as applied to a consumer or business competitor, would be unethical, oppressive or substantially injurious. None of the allegations imply or even demonstrate that appellants were in a position of great influence with the Caillouet Land Corporation or that they were in a superior negotiation position with regards to acquiring the leases that had not been terminated by judicial decree. Nor do we have a situation where appellees were under a duty to not disclose to Caillouet the existence of the agreements that had been confected between John and Belle Pass.

CONCLUSION
Therefore, we find that the trial court did not err in its finding that appellants failed to state a cause of action as to their claims for tortious interference with contract and unfair trade practices. Accordingly, the judgment of the trial court is affirmed, and all costs of this appeal are assessed against appellants.
Affirmed.
CARTER, J., concurs.
NOTES
[1] The caption of this appeal reflects a consolidation of two separate suits at the trial court level. The only issues before this court arise out of the trial court's granting judgments sustaining two separate peremptory exceptions raising the objection of no cause of action under Belle Pass Terminal, Inc. et al. versus John Inc., et al., suit number 65,847. These two judgments were appealed, and each judgment was assigned a separate number and then consolidated by this court. Jolin, Inc. versus Belle Pass Terminal, Inc. et al., suit number 67,730 is still pending at this time.