706 So.2d 503 (1997)
Larry C. WALTERS and Harriet Tucker Walters
v.
RUBICON INC., R.H. Lane, Leonard B. Sanford, and John DeLaney.
No. 96 CA 2294.
Court of Appeal of Louisiana, First Circuit.
December 29, 1997.
*504 Dawn N. Guillot, Baton Rouge, for plaintiffs/appellants Larry C. and Harriet Walters.
Michael F. Weiner, New Orleans, for defendants/appellees Rubicon, Inc., R.H. Lane, Leonard B. Sanford, and John DeLaney.
Before FOIL, WHIPPLE and KUHN, JJ.
WHIPPLE, Judge.
This is an appeal by Larry C. (Mr. Walters) and Harriet Walters (Mrs. Walters) from a trial court judgment granting a peremptory exception of no cause of action on his claim for damages for intentional infliction of emotional distress. For the following reasons, we reverse and remand.[1]

*505 FACTS AND PROCEDURAL HISTORY
Larry C. Walters was employed by Rubicon, Inc. from July, 1977, through May 3, 1994. While employed by Rubicon, he held the positions of Environmental Engineer, Environmental Engineering Supervisor and Associate. Defendant, R.H. Lane, has been Rubicon's Manager of Safety, Health, and Environmental Affairs since July, 1988, and while serving in this position, was Mr. Walters' supervisor. Leonard B. Sanford, also a defendant herein, served as Rubicon's Industrial Relations Manager during the relevant time period. Likewise, defendant, John DeLaney, served as Rubicon's General Manager.
On May 2, 1995, Mr. Walters and his wife filed suit against Rubicon, Lane, Sanford, and DeLaney seeking damages for intentional infliction of emotional distress and disability discrimination. In the petition, Mr. Walters sought damages for loss of past and future wages, loss of future earning capacity, loss of benefits, compensatory and/or punitive damages, damages for mental anguish, damages for loss of consortium, interest from the date of judgment, legal interest from the date of judicial demand, reasonable attorneys' fees, penalties, and costs of proceedings and trial by jury. In the petition, his wife sought damages for loss of service, consortium and assistance, emotional distress, and mental anguish.
In response, defendants filed a peremptory exception raising the objections of no cause of action and prescription. Before judgment was rendered on the exceptions, the Walters filed an amending and supplementing petition to allege additional facts and incidents involving the defendants. The exceptions were heard on February 26, 1996. The trial court granted the defendants' exception of no cause of action, dismissing Mr. Walters' claims for intentional infliction of emotional distress, but affording him 15 days to amend his petition to state a cause of action.[2] Additionally, the March 7, 1996 judgment rendered on the exceptions limited Mrs. Walters' claim to loss of consortium and the trial court deferred ruling on the prescription issue.[3]
In accordance with the judgment of the trial court, Mr. Walters again amended his petition, to which defendants again excepted. After a hearing, the trial court, granted the defendants' exception of no cause of action, dismissing all of Mr. Walters' claims against the individual defendants, as well as his intentional infliction of emotional distress claim against Rubicon.
On appeal, Mr. Walters contends the trial court erred, as a matter of law, in failing to find that the allegations contained in the petitions are sufficient to state a cause of action against defendants.

DISCUSSION
A peremptory exception of no cause of action is used by the defendant "to test the legal sufficiency of the petition by determining whether the law affords a remedy to the plaintiff on the facts that are alleged in the petition." Stevenson v. Lavalco, Inc. 28,020, p. 1 (La.App. 2 Cir. 2/28/96); 669 So.2d 608, 610. In determining whether a plaintiff has stated a cause of action, the court looks to the facts set out in the petition, accepting them as true without regard to extrinsic evidence. LSA-C.C.P. art. 931; Montalvo v. Sondes, 93-2813, pp. 5, 6 (La.5/23/94); 637 So.2d 127, 131 (La.1994). The court must accept well pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, *506 the plaintiff is legally entitled to the relief sought, based on allegations in the petition which the court accepts as true. Montalvo, 93-2813 at p. 6; 637 So.2d at 131. However, because Louisiana uses fact pleading, mere conclusory statements in the petition, without supporting facts, are insufficient to set forth a cause of action. Montalvo, 93-2813 at p. 6; 637 So.2d at 131. The purpose of the exception is only to determine if a cause of action exists and not whether the plaintiff will ultimately prevail at trial. When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence. Kuebler v. Martin, 578 So.2d 113, 114 (La.1991).
An appellate court should review a trial court's ruling sustaining an exception of no cause of action de novo because "the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition." City of New Orleans v. Board of Commissioners of the Orleans Levee District 93-0690, p. 29 (La.7/5/94); 640 So.2d 237, 253.
The leading Louisiana case on intentional infliction of emotional distress is White v. Monsanto, 585 So.2d 1205 (La.1991), which made official Louisiana's adoption of intentional infliction of emotional distress as a viable cause of action. White, 585 So.2d at 1209. One who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. White, 585 So.2d at 1209. Thus, in order to recover, a plaintiff must prove (1) the conduct was extreme and outrageous, (2) the emotional distress of the plaintiff was severe, and (3) the defendant "desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White, 585 So.2d at 1209.
Although the Louisiana Supreme Court in White did not define extreme and outrageous, the Court noted that the conduct must "be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and "be regarded as atrocious and utterly intolerable in a civilized community." White, 585 So.2d at 1209. Thus, disposing of the remains of a parent without authority is outrageous and will support a cause of action for intentional infliction of emotional distress. Dufour v. Westlawn Cemeteries, Inc., 94-81, p. 6 (La.App. 5 Cir. 6/28/94); 639 So.2d 843, 848, citing Mavromatis v. Lou-Mar, Inc., 93-0379, 93-1212, p. 9 (La.App. 4 Cir. 2/11/94); 632 So.2d 828, 835. Allegations regarding a co-employee's almost daily improper sexual comments and advances coupled with threats of physical violence and attempting to run over plaintiff with a forklift, have also been deemed to satisfy the White requirements. Bustamento v. Tucker, 607 So.2d 532, 543 (La.1992).
As noted in White, many intentional infliction of emotional distress cases arise in the employment setting where conduct which is otherwise inactionable can become actionable as "extreme and outrageous" when the offender is in a position of power and authority over the plaintiff. Thus, many of the cases involve circumstances arising in the workplace. White, 585 So.2d at 1209-1210. However, this proposition is balanced by the notion that the same conduct may be privileged under other employment circumstances so that "disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable." White, 585 So.2d at 1210. Hence, workplace conduct amounting to a tort is usually "limited to cases involving a pattern of deliberate, repeated harassment over a period of time." White, 585 So.2d at 1210.
In White, the Court concluded that the allegedly offensive conduct, a supervisor's screaming, profane-filled lecture, lasting approximately one minute, was not actionable. The Court found the supervisor's conduct directed toward plaintiff, a middle-aged employee and others, was not extreme and outrageous, but rather merely "crude, rough and uncalled for." White, 585 So.2d at 1211. The Court noted that the actor must intend "to cause severe emotional distress, and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." White, *507 585 So.2d at 1210. Thus, the Court limited the scope of "extreme and outrageous" by exempting "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." White, 585 So.2d at 1209. The Court then concluded that the supervisor's lecture was only an inactionable, employment-rooted reprimand.
The Court noted that while the supervisor's actions were improper and unpleasant, this isolated instance of improper behavior by a supervisor who lost his temper would not support plaintiff's claim for recovery for an intentional tort. Thus, because the supervisor had no particular knowledge of Ms. White's susceptibility to emotional distress, his conduct was judged according to what a reasonable person could be expected to endure. White, 585 So.2d at 1210. The court noted that a reasonable person is expected to be "hardened to a certain amount of rough language and occasional acts that are definitely inconsiderate and unkind." White, 585 So.2d at 1209. Thus, not only was the supervisor's conduct therein deemed not extreme and outrageous, but also lacking the required intent or substantial certainty necessary to establish an actionable claim under the White factors.
Applying these precepts, we find Mr. Walters has alleged sufficient facts in the petitions filed herein to disclose a cause of action for intentional infliction of emotional distress, as contemplated by White. The original petition alleges that Lane continuously cursed him, screamed at him, and threatened him; and that Rubicon, Lane, and DeLaney ordered and required him "to perform and/or ignore policies, procedures and factual situations which he believed to be illegal and/or in violation of the [Louisiana] Department of Environmental Quality, Environmental Protection Agency, and other agency regulations."
The petition sets forth in adequate detail examples of complaints made by Mr. Walters to Lane and others and their responsive "orders" to Mr. Walters. These complaints included possible violations of hazardous waste dumping measures, building a new facility on a hazardous waste pit, failure to comply with EPA standards by not fixing the cracked concrete slab of a container used to house hazardous waste, and recommendations that Rubicon stop a release from a sulfuric acid concentrator. According to the petition, upon making these suggestions or bringing them to the defendants' attention, Mr. Walters was subjected to verbal abuse, ridicule, and threats from Lane, which he alleges were ignored by his superiors, causing him to suffer additional extreme physical symptoms and stress-induced injuries.
Mr. Walters then amended his original petition, alleging that Rubicon had in its possession copies of his doctors' reports indicating Mr. Walters' ability to function in a less abusive environment, and more importantly, that these continued acts of abuse would result in Mr. Walters' further emotional distress. Thus, the first amending petition alleges the element of intent and also the outrageous conduct element, as discussed in White by referencing circumstances which sufficiently state an actionable claim, if proven.
According to paragraphs I and II of the First Amending Petition, amending paragraphs "6a." and "10a." respectively:
Said physicians' reports were known and received by Defendants which indicated Walters could function in a less abusive environment but continued abuse would cause emotional distress. Despite said knowledge, defendants refused to alter Walters' work environment.
* * * * * *
The above stated actions have continued to cause stress and anxiety to petitioner in that such actions, if illegal or in violation of state and federal regulations, may be investigated, may require Walters' response at any time and are ongoing wrongs. Despite knowledge that Walters was concerned of said violations defendants failed or refused to alter such violations.
Additionally, Mr. Walters' amending petition sets forth a series of phone calls, statements and other acts by Sanford and DeLaney involving Mr. Walters and his family members which he contends were in furtherance of the defendants' harassment and infliction of emotional distress following his *508 being placed on leave and in addition to termination of his employment. Lastly, Mr. Walters alleges that in October of 1995, Sanford "cut in front" of Mr. Walters in traffic, endangering Mr. Walters and his son, as part of a pattern of conduct; and that in January of 1996, he encountered DeLaney at Wal-Mart, whereupon DeLaney made a threatening gesture by forming a gun with his hand and mouthing "pow," which he contends were in furtherance of the continued harassment, abusive work environment, retaliatory measures, and work-related harassment forming a pattern of continuing conduct by the defendants.
Based on these allegations made by Mr. Walters, we find the trial court erred in ruling that Mr. Walters failed to state a cause of action. These allegations are not those of mere workplace discipline, as described in White, but are akin to the pattern of intentional behavior and circumstances alleged in Bustamento and found lacking in White. Finally, we note that while the petitions filed herein do not contain a specific reference to LSA-R.S. 30:2027 et seq., the allegations of fact in the petitions can be read to state a cause of action under these statutory provisions as well.[4]

CONCLUSION
For these reasons, we find the trial court erred in granting the defendants' second exception of no cause of action and dismissing Mr. Walters' remaining claim against Rubicon, Lane, Sanford, and DeLaney. Accordingly, the June 5, 1996 judgment granting defendants' exception of no cause of action is reversed and the matter is remanded for further proceedings. Costs of this appeal are assessed against defendants.
REVERSED AND REMANDED.
NOTES
[1] Although the motion and order granting appeal were filed herein on behalf of both Mr. and Mrs. Walters, the brief and assignment of errors refer solely to Mr. Walters, as appellant. We note that the judgment on appeal and the appellant's brief and assignment of error focus solely on the trial court's dismissal by exception of Mr. Walters' claim of intentional infliction of emotional distress. In a prior judgment, the trial court dismissed all of Mrs. Walters' claims except her claim for loss of consortium. No appeal was taken from the prior judgment; and no brief or assignment of errors were filed on behalf of Mrs. Walters regarding the instant judgment on appeal. Thus, we conclude the sole matter presented for review is whether the trial court erred in dismissing Mr. Walters' remaining claim for intentional infliction of emotional distress.
[2] The judgment also dismissed other claims asserted by the plaintiffs against defendants pursuant to LSA-R.S. 46:2254, as well as Mrs. Walters' claim for intentional infliction of emotional distress.
[3] We note that although the "no cause" exception is triable on the face of the petition, the exceptions were tried together herein, and the trial court received a joint stipulation of facts. No error has been assigned to the trial court's ruling in this regard.
[4] With permission of the court, Walters amended his petition for a second time. This amending petition states that defendants engaged in extreme and outrageous conduct, and refers to the incidents alleged in the first two petitions. As defendants correctly note, due to the nature of Louisiana's fact pleading, conclusory statements in the petition alone are insufficient to set forth a viable cause of action. Montalvo, 637 So.2d at 131. However, as stated above, we find Mr. Walters had already stated a cause of action for intentional infliction of emotional distress in his first amended petition. Thus, the second amended petition, likewise, states a cause of action.